USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND;
TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
RELIEF AND CHARITY FUND; and THE
NEW YORK CITY AND VICINITY
CARPENTERS LABOR-MANAGEMENT
CORPORATION,

                Plaintiffs,

v.

DUNCAN PARTNERS, LLC,

                Defendant.

No. 19-CV-8120 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, and Educational and Industry Fund (the "ERISA Funds"), Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund"), and the New York City and Vicinity Carpenters Labor-Management Corporation (collectively, the "Funds") have moved pursuant to Federal Rule of Civil Procedure 55 for a default judgment against Defendant Duncan Partners, LLC ("Duncan"). For the reasons set forth below, the motion is granted.

**BACKGROUND**

The Court assumes the parties' familiarity with the facts and procedural history of this case. Therefore, only what is relevant to this Opinion is set forth below.

The Funds are the employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002. At all relevant times, Duncan was a member of the Association of Wall Ceiling & Carpentry Industry of New York, Inc. (the "Association") and, as a member of it, agreed to be bound to the collective bargaining agreements between the Association and the New York City District Council of Carpenters (the "Union"), for which the Funds acted as a collection agent. *See* Dkt. 31 ¶¶ 2, 5 (Decl. of Davidian). The Union and Association entered into a Collective Bargaining Agreement (the "CBA"), which covered the period from July 1, 2017 until June 30, 2024. *Id.* ¶ 6; *see also* Dkt. 31, Ex. B (CBA). Therefore, at all relevant times, Duncan was bound by this CBA, as well as the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"), which was promulgated pursuant to the CBA. Dkt. 31 ¶¶ 7, 10; *see also* Dkt. 31, Ex. C (Collection Policy).

Pursuant to its obligations under the CBA, Duncan was required to remit contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union and to abide by particular policies and regulations adopted by the Funds. *See* Dkt. 31, Ex. B, Art. XVII § 1. To ensure compliance with these obligations, the CBA permitted the Funds to audit Duncan and required Duncan to furnish its books and payroll records upon demand. *See* Dkt. 31, Ex. B, Art. XVII § 1(a). In the event that a lawsuit or arbitration was commenced to recover delinquent contributions, the CBA and Collection Policy granted the Funds the right to "(1) the unpaid contributions, plus (2) interest on the unpaid contributions determined at the prime rate of Citibank

plus 2%; plus (3) an amount equal to the greater of (a) the amount of the interest charges on the unpaid contributions as determined . . . above, or (b) liquidated damages of 20% of the amount of the unpaid contributions; plus (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate." *Id.* at Art. XVII § 10(a); *see also* Dkt. 31, Ex. C, §§ IV(8), V(4)-(6).

An audit of Duncan's books and payroll records was conducted in connection with its work on the "Drywall/Carpentry/Ceiling @ MMC Core & Shell" project (the "Project") from March 28, 2018 to June 11, 2019.  *See* Dkt. 31 ¶ 16; Dkt. 32 ¶ 5 (Decl. of Pahhas).  The audit found that Duncan failed to remit contributions to the Funds for 4,591 hours paid/worked by employees on the Project. *See* Dkt. 32 ¶ 10; Dkt. 32, Ex. A at 12 (Audit).  Accordingly, the audit revealed that Duncan owed $254,228.22 to the Funds in connection with that Project, which consisted of (1) a principal deficiency of $202,174.12; (2) interest thereon of $6,646.17; (3) audit costs of $3,825; (4) promotional fund contributions of $1,147.75, and (5) liquidated damages of $40,434.88.  *See* Dkt. 32, Ex. A.

In August 2019, after learning that Duncan failed to remit these contributions to the Funds, Plaintiffs filed this action against Duncan and co-Defendant Travelers Casualty & Surety Company of America ("Travelers"), which had issued a bond "guaranteeing the payment of all wages and benefits owed by Duncan, in connection with work performed on the Project." Compl. ¶ 14.  In April 2020, Plaintiffs settled with Travelers for $134,210.33 – a portion of the principal deficiency.[1]  *See* Dkt. 31 ¶ 19; *see also* Dkt. 29 (Stip. of Voluntary Dismissal).  Although Plaintiffs have recovered $144,290.03 thus far, Duncan remains liable for $117,013.81, which consists of "(1) the balance of the principal deficiency of $57,884.39; (2) interest through May 15, 2020 of

---

[1] Travelers also paid vacation benefits in the amount of $10,079.79.  *See* Dkt. 31 ¶ 19 n.1.

$13,721.79; (3) promotional fund contributions of $1,147.75; (4) liquidated damages of $40,434.88; and (5) audit costs of $3,825." Pls.' Mot. at 4 (Dkt. 34).  Plaintiffs also seek $16,655.89 in attorneys' fees and $575.39 in costs incurred in bringing this action. *See* Dkt. 33 ¶¶ 16-17.

On April 25, 2020, the Clerk of Court issued a certificate of default against Duncan. *See* Dkt. 27.  On May 15, Plaintiffs moved for a default judgment against Duncan. *See* Dkt. 30.  On May 20, after reaching the settlement with Travelers, Plaintiffs dismissed their claims against Travelers with prejudice. *See* Dkt. 37.  That same day, the Court ordered Plaintiffs to serve Duncan with the motion for default judgment and any supporting papers by June 1, 2020 and for Duncan to file and serve any answering papers on Plaintiffs no later than June 19, 2020. *See* Dkt. 38.  The Order further stated that "[i]n light of the COVID-19 crisis, the Court will not have a show cause hearing and will instead resolve this matter on the papers." *Id.*  It warned that "[i]f Duncan Partners fails to respond by June 19, 2020 or fails to request an extension to do so, judgment will be entered for Plaintiffs." *Id.* (emphasis omitted).  On May 27, Plaintiffs filed an affidavit of service, affirming that Duncan had been served.  Duncan did not respond.

## LEGAL STANDARD

Under Rule 55, a court may – on a plaintiff's motion – enter a default judgment against a defendant who "has failed to plead or otherwise defend" itself in an action brought against it. Fed. R. Civ. P. 55(a).  In particular, "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).  Generally speaking, "a default is an admission

4

of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

## DISCUSSION

**I.     Service**

It is axiomatic that "[a] default judgment may not be granted . . . if the defendant has not been effectively served with process." *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014); *see also Aspex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd.*, Nos. 00-CV-2389, 01-CV-1315 (RMB), 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) ("A default judgment 'obtained by way of defective service is void *ab initio* and must be set aside as a matter of law.'" (citation omitted)). The burden is on the plaintiff to prove that service was adequate. *See Alsaud*, 12 F. Supp. 3d at 687.

Here, Plaintiffs have demonstrated that they adequately served Duncan with the summons and complaint by serving "Nancy Dougherty," who is "an authorized person in the Corporation Division of the Department of State and empowered to receive such service." Dkt. 6 (Affidavit of Service); *see also Reilly v. Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *3 (S.D.N.Y. Oct. 31, 2016) (explaining that under New York Business Corporation Law § 306, "[s]ervice is complete when the Secretary of State is 'so served'"). This method of service complies with Federal Rule of Civil Procedure 4, which permits a plaintiff to serve "a domestic or foreign corporation, or a partnership, or other unincorporated association that is subject to suit under a common name" by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A); *see also Sheldon v. Plot Commerce*, No. 15-CV-5585, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) ("[S]ervice under Rule 4 may also be deemed

proper if plaintiff has complied with New York law"). Accordingly, pursuant to Rule 4, Plaintiffs adequately served Duncan with the summons and complaint.

On May 21, 2020, Plaintiffs served their motion for default judgment, the accompanying papers, and this Court's most recent order by personally delivering copies of each to Edward Spychalsky, the Managing Agent of Duncan Partners. *See* Dkt. 39 (Affidavit of Service). Plaintiffs' service of these recent orders complies with Federal Rule of Civil Procedure 5, which governs filings made after an action has commenced and permits "handing it to the person" or "leaving it at the person's office with a clerk or other person in charge; or if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there" Fed. R. Civ. P. 5(b)(2)(B)(i); *see also Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("Under the laws of New York, service on a corporation may be effected by tendering the [papers] to, *inter alia*, a corporate director, officer, or managing or general agent." (citing N.Y. C.P.L.R. § 311(a)(1)). As such, Plaintiffs have established that they have also properly served Duncan with the motion for default judgment, supporting papers, and the Court's May 20th Order.

**II.   Liability**

The Court next turns to whether – accepting Plaintiffs' factual allegations as true – Duncan's liability is established as a matter of law. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 187. Plaintiffs seek to establish Duncan's liability under section 515 of ERISA, 29 U.S.C. § 1145. *See* Pls.' Mot. at 2. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of

6

such plan or such agreement." 29 U.S.C. § 1145. Upon a finding that an employer has violated its obligation, a judgment may be entered against that employer in the amount of delinquent contributions, plus interest and liquidated damages as prescribed by the governing documents. *See* 29 U.S.C. § 1132(g)(2). Even if an employer or third party has made partial payment of the outstanding contributions during the litigation, that does not relieve the employer from having to pay penalties pursuant to § 1132(g). *See Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1508 (2d Cir. 1995) ("Permitting delinquent employers to avoid paying § 1132 penalties after suit is filed . . . would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers.").

  Here, because Duncan is bound to the CBA and Collection Policy, it was required to remit contributions to the Funds. *See* Dkt. 31, Ex. B, Art. XVII § 1. Based on records furnished by Duncan in accordance with the CBA, an audit was conducted which established that Duncan owed $202,174.42 in contributions to the Funds. *See* Dkt. 32 ¶¶ 9-10. Although Plaintiffs were able to recover some of this principal amount in a settlement with Travelers, *see* Pls.' Mot. at 4, a portion — which Duncan is liable for — remains due. *See* Pls.' Mot. at 4. Based on the record provided, and in light of Duncan's failure to appear in this action, Plaintiffs have sufficiently established Duncan's liability under ERISA for failing to remit contributions. *See Ferrara v. PJF Trucking LLC*, No. 13-CV-7191, 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014) ("A default constitutes an admission of well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true.").

### III. Damages

Finally, the Court turns to Plaintiffs' request for damages. Plaintiffs seek $133,669.70 in damages against Duncan, which represents "[1] the balance of the contributions owed of $57,884.39, [2] interest of $13,721.79, [3] promotional fund contributions of $1,147.75, [4] liquidated damages of $40,434.88, and [5] audit costs of $3,825, plus attorneys' fees and costs in the amount of $16,655.89, and post judgment interest at the statutory rate." Pls.' Mot. at 6-7. Based on Plaintiffs' submissions, there is a sufficient basis to determine damages on the papers and an evidentiary hearing is unnecessary. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 39 (2d Cir. 1989); *William Mark Corp. v. 1&CC et al.*, No. 18-CV-3889 (RA), 2019 WL 4195365, at *2 n.5 (S.D.N.Y. May 20, 2019) ("An inquest into damages may be conducted 'on the papers,' without an evidentiary hearing where there is a sufficient basis on which to make a calculation.").

#### A. Principal Amount

Plaintiffs first request $57,884.39, which is the amount of principal contributions still owed by Duncan. *See* Dkt. 31 ¶ 29. Although the audit revealed a principal deficiency of $202,174.42, *see* Dkt. 32, Ex. A, Plaintiffs and Travelers have since entered into a settlement agreement for $134,210.33, *see* Dkt. 31 ¶ 19. Travelers also subsequently paid $10,079.79, which "represent[ed] vacation benefits deducted from the relevant employees who performed work on the Project." *Id.* ¶¶ 19-20 n.1. Accordingly, Plaintiffs have recovered $144,290.03 toward the principal deficiency, but are still owed $57,884.39 by Duncan. *See id.* ¶ 21. Because the CBA required Duncan as an "Employer covered by th[at] Agreement . . . [to] make contributions for each hour worked of all employees covered by this Agreement," *see* Dkt. 31, Ex. B, Art. XVII § 1, Plaintiffs are entitled to $57,884.39 for the remaining balance of the outstanding contributions.

### B. Interest

Plaintiffs also request $13,721.79 in interest. *See* Dkt. 31 ¶ 29. According to the CBA, "in the event that formal proceedings are instituted before a court . . . to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s) . . . interest on the unpaid contributions determined at the prime rate of Citibank plus 2%." Dkt. 31, Ex. B, Art. XVII § 10(a)(2). The auditors calculated the interest at the rate of 7.5%, the prime lending rate of Citibank plus 2%, compounded daily, on a declining principal basis through the date of completion of the original report, October 29, 2019, in the total amount of $6,646.17. *See* Dkt. 32 ¶¶ 12-15. The interest from the date of the audit through May 15, 2020, the date on which this motion was filed, was then calculated at the rate of 6.75%, totaling $7,075.62. *See* Dkt. 31 ¶ 28; *see also* Dkt. 31, Ex. D (Interest Calculation). Therefore, $13,721.79 in total interest is owed to Plaintiffs, for which Duncan remains liable.

### C. Promotional Fund Contributions

Plaintiffs also request $1,147.75 in promotional fund contributions. *See* Pls.' Mot. at 6. Pursuant to the CBA, "[a]ll Employers . . . shall contribute to the Industry Promotional Fund for the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated ('Promotional Fund') twenty-five cents ($0.25) for every hour worked by the employees of said Employers for work defined by this Agreement." Dkt. 31, Ex. B, Art. XX § 1. The audit concluded that Duncan owed $1,147.75 to the Promotional Fund. *See* Dkt. 32, Ex. A. Accordingly, Plaintiffs are also entitled to this amount in outstanding promotional fund contributions.

### D. Liquidated Damages

Plaintiffs next seek $40,434.88 in liquidated damages – the amount calculated by the auditors. *See* Dkt. 31 ¶ 18; Dkt. 32, Ex. A. Pursuant to the CBA, Duncan must pay "an amount

9

equal to the greater of [] the amount of the interests charges on the unpaid contributions [], or [] liquidated damages of 20% of the amount of the unpaid contributions." Dkt. 31, Ex. B, Art. XVII § 10(a)(3). Because "twenty percent (20%) of the principal delinquency was the greater of the two options," Dkt. 32 ¶ 17, Plaintiffs are entitled to $40,434.88 in liquidated damages.

### E. Audit Costs

Plaintiffs also request $3,825 in audit costs. *See* Dkt. 31 ¶ 29. According to the Collection Policy, "[t]he employer shall be required to pay the cost of a payroll review and/or audit if the payroll review and/or audit discloses an underpayment of contributions to the Funds totaling at least two (2) percent of the employer's total payroll for covered employees for the payroll review and/or audit period at issue, or an underpayment of contributions totaling at least $10,000, whichever is less." Dkt. 31, Ex. C § IV ¶ 8. As previously stated, the outstanding contributions totaled $202,174.42 – an amount that triggers Duncan's obligation to pay for the audit under the CBA. The audit required 45 hours of work at an hourly rate of $85.00 per hour, totaling $3,825. *See* Dkt. 32 ¶ 21; Dkt. 32, Ex. A. Accordingly, Plaintiffs are entitled to $3,825 to cover the audit's costs.

### F. Attorneys' Fees & Costs

Plaintiffs request $16,655.89 in attorneys' fees and costs. *See* Dkt. 33 ¶ 17. Here, both ERISA and the CBA permit Plaintiffs to recover attorneys' fees. *See* Dkt. 31, Ex. B, Art. XVII § 10(a). ERISA provides that, "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g). Courts have, therefore, concluded that awarding attorney's fees and costs is mandatory when – as is the case here – an ERISA-covered fund is forced to initiate

an action against an employer to recoup delinquent contributions. *See N.Y. State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 135 (2d Cir. 1996) ("As is apparent from the statutory text, an award of attorney fees and costs is . . . mandatory under subsection (2), of section 1132(g)."). Because Plaintiffs brought this action to recover Duncan's delinquent contributions under ERISA, Plaintiffs have established that they are entitled to reasonable attorneys' fees and costs.

Although Plaintiffs are entitled to attorneys' fees, an inquiry into what is a reasonable amount is necessary. Petitioners' counsel submitted contemporaneous records, reflecting the time spent and activities performed in litigating this matter. *See* Dkt. 33, Ex. E (Attorneys' Billing History). In total, counsel billed $16,080.50 for 58 hours of work. *See id.* Specifically, counsel billed the time of (1) Nicole Marimon, a partner, who graduated from law school in 2014, at a rate of $275 per hour in 2019 and $350 per hour in 2020, *see* Dkt. 33 ¶ 10; (2) Marlie Blaise, an associate, who graduated from law school in 2018, at a rate of $275 per hour, *id.* ¶ 11; (3) Adrianna Grancio, an associate, who graduated from law school in 2016, at a rate of $275 per hour, *id.* ¶ 12; (4) Andrew Federico, a former associate, who graduated from law school in 2018, at a rate of $275 per hour, *id.* ¶ 13; and (5) legal assistants at a rate of $120 per hour, *id.* ¶ 14.

With respect to the amount of hours billed, the Court has examined the submitted invoice and finds that the hours expended were reasonable. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Metroplex Serv. Grp., Inc.*, No. 18-CV-5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (explaining that an invoice "reflects sound billing practices" when "[i]t is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort").

11

To determine if the requested fees are reasonable, the Court must consider what it – as well as other courts in this district – have recently deemed reasonable rates for these lawyers. Because recent decisions have approved somewhat lower rates than those proposed here, the Court will reduce the four lawyers' rates accordingly. First, regarding Ms. Marimon's work, the Court grants her request for a rate of $275 per hour for work performed in 2019. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Skyeco Grp. LLC*, No. 19-CV-7608 (LGS), 2019 WL 6497533, at *3 (S.D.N.Y. Dec. 3, 2019) (awarding attorney's fees to Ms. Marimon at a rate of $275 per hour). The Court, however, declines to grant her request for $350 per hour for work completed in 2020. Courts in this circuit have generally held that $300 per hour is a reasonable rate for partners handling matters of this sort. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund et al. v. Earth Constr. Corp.*, No. 19-CV-5411 (ALC), 2020 WL 614740, at *3 (S.D.N.Y. Feb. 10, 2020) (noting that a rate of $300 per hour for a partner is "reasonable and analogous to the amounts granted by courts in this district"). Indeed, within the past few months, this Court has declined to grant Ms. Marimon's request for a rate of $350 per hour for work performed in 2020. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Shorecon-NY, Inc.*, No. 17-CV-5210 (RA), 2020 WL 3962127, at *5 (S.D.N.Y. July 13, 2020) (reducing Ms. Marimon's rate to $300 per hour for work performed in 2020); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Triangle Enter. NYC, Inc.*, No. 20-CV-793 (RA), 2020 WL 2306484, at *5 (S.D.N.Y. May 8, 2020) (noting, in rejecting Mr. Marimon's request for $350 per hour, that "Ms. Marimon was requesting a rate of $275 per hour for work performed only two to three months earlier"); *see also Trs. of N.E.*

*Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (granting Ms. Marimon's request for attorney's fees at a rate of $300 per hour because it "seems reasonable given her position as partner"). For the same reasons, the Court concludes that a rate of $300 per hour is more appropriate for Ms. Marimon's work performed in 2020, and her fees should thus be calculated at a rate of $275 per hour prior to January 1, 2020 and $300 per hour as of January 1, 2020.

With respect to the work of Ms. Blaise, Ms. Grancio, and Mr. Federico, the Court declines to approve their requested rate of $275 per hour. Other courts in this district have "recently found these rates unreasonable, and concluded that $225 per hour was an appropriate rate" for associates with similarly limited experience. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-CV-149 (AJN), 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) ("Courts within the district have recently . . . concluded that $225 per hour was an appropriate rate for [an associate] and associates with [their] experience"); *see also, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. DV I, LLC*, No. 17-CV-7367 (PAE), 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is the appropriate rate for an associate who is "similarly situated [to other] associates"). Accordingly, the fees of Ms. Blaise, Ms. Grancio, and Mr. Federico in connection with this litigation are to be calculated at a rate of $225 per hour.

In sum, the Court grants Plaintiffs' request for attorneys' fees, but reduces the proposed billing rates of the four attorneys. Because the billing records are extensive and the reduced rates

alter Plaintiffs' requested attorneys' fees, counsel is ordered to submit a revised proposal for fees incurred in this action. These fees should be calculated based on the rates provided above.

Lastly, Plaintiffs' request for $575.39 in costs and expenses incurred in litigating this action, including the filing fee, service fees, and subpoena fee, is granted. *See* Pls.' Mot. at 6; *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Jessica Rose Enters. Corp.*, No. 15-CV-9040 (RA), 2016 WL 6952345, at *5 (S.D.N.Y. Nov. 28, 2016) (finding submitted costs for service fees and court filing fees to be "standard costs paid in actions brought in this Court" and thus reasonable).

### G. Post-Judgment Interest

Finally, Plaintiffs seek post-judgment interest at a statutory rate. *See* Pls.' Mot. at 7. 28 U.S.C. § 1961(a) mandates postjudgment interest "on awards in civil cases as of the date judgment is entered." *See also N.Y.C. Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20-CV-51 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020) ("Section 1961 applies to actions to confirm arbitration."). The Court, therefore, grants postjudgment interest to "be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is granted. As to damages, Plaintiffs' request for $57,884.39 in the principal deficiency, $13,721.79 in interest, $1,147.75 in promotional fund contributions, $40,434.88 in liquidated damages, $3,825 in audit costs, and $575.39 in costs incurred in bringing this action, as well as postjudgment interest, are granted. Plaintiffs are also entitled to attorneys' fees in connection with this action at the rates discussed above.

No later than August 5, 2020, Plaintiff shall submit a revised request for attorneys' fees. With those papers, Plaintiffs shall submit a revised proposed order for default judgment. After the Court receives and reviews those papers, it will direct the Clerk of Court to enter a default judgment and close this case.

Dated:   July 22, 2020
        New York, New York

_____
Ronnie Abrams
United States District Judge

15